IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAM CONNER and FRANK MUEGGE,

    Plaintiffs,

v.

FORD MOTOR COMPANY,
JOHNSON CONTROLS, INC.,
and VISTEON CORPORATION,

    Defendants.

---

FORD MOTOR COMPANY,

    Defendant/Third-Party Plaintiff,

v.

TIMOTHY J. SWINDELL,

    Third-Party Defendant.                          Case No. 07-cv-122-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Pending before the Court is an Amended Motion to Dismiss Third Party Complaint (Doc. 24) and a Supplemental Motion to Dismiss Third-Party Complaint (Doc. 61). Both have been fully briefed and are ripe for determination.[1] For the

---

[1] On July 9, 2008, the Court issued an Order, *sua sponte* (Doc. 86), requiring Plaintiffs to file a Jurisdictional Memorandum in order to show diversity of citizenship. Plaintiffs complied with the Order (Doc. 89), and moved to file a Third Amended Complaint to include the requisite jurisdictional allegations. The Court granted leave (Doc. 90), finding diversity jurisdiction sufficiently demonstrated and Plaintiffs thereafter filed their Third Amended Complaint (Doc. 91).

reasons discussed herein, the Motions must be denied.

## II. **BACKGROUND**

Plaintiffs Pam Connor and Frank Muegge initially filed this products liability suit in Illinois state court against defendant Ford Motor Company ("Ford"). On August 15, 2006, both Plaintiffs were passengers, riding in the third row seat of a 2003 Ford Expedition (Doc. 91 - Third Amended Comp., Count 1, ¶ 1; Count 4, ¶ 1). Both Plaintiffs claim they were wearing seatbelts (*Id*.). The Expedition was stopped at a traffic signal at the intersection of U.S. 98 and Wildwood Road in Panama City, Florida, when it was struck in the rear by a vehicle that failed to stop (*Id*. at Ct. 1, ¶ 2; Ct. 4, ¶ 2). Plaintiffs allege that upon impact, "the floor of the Expedition crumpled upward and its seatback collapsed and failed to restrain [them]" (*Id*.). Plaintiff Connor alleges that she was ramped up the seatback and ejected (*Id*. at Ct. 1, ¶ 2). Plaintiff Muegge alleges he was also ramped up the seatback and partially ejected from the vehicle (*Id*. at Ct. 4, ¶ 2). Thus, Plaintiffs filed suit against defendant Ford claiming the Expedition was unreasonably dangerous in that its seatback, frame and vehicle door was defectively designed, the vehicle itself was defectively manufactured, and that Ford failed to warn users of the hazard that the seatback might not restrain third row passengers in a foreseeable rear impact collision (*Id*. at Ct. 1, ¶ 4; Ct. 4, ¶ 4). Both Plaintiffs allege they have sustained severe

and permanently disabling injuries[2] due to the defective and unreasonably dangerous condition of the Expedition (*Id.* at Ct. 1, ¶ 5; Ct. 4, ¶ 5).

Ford removed this from state court on the basis of diversity jurisdiction, pursuant to **28 U.S.C. § 1332** (Doc. 2). Plaintiffs did not seek remand. Plaintiffs subsequently amended their Complaint to add two new defendants: Johnson Controls, Inc. and Visteon Corporation (Doc. 40 - First Amended Comp.; Doc. 49 - Second Amended Comp.). Both Johnson Controls, Inc. and Visteon Corporation are alleged to have manufactured and sold the third row seat of the Expedition at issue (also alleging that Visteon Corporation is now Johnson Controls, Inc.) (*see* Doc. 91, Ct. 2, ¶ 3; Ct. 3, ¶ 3).

After removing the suit to federal court, Ford filed its Third-Party Complaint against third-party defendant Timothy J. Swindell ("Swindell") (Doc. 16), alleging a claim for contribution pursuant to the Illinois Joint Tortfeasor Contribution Act, **740 ILL. COMP. STAT. 100/2** (Doc. 16, ¶ 6). Swindell was the driver of the vehicle which caused a collision with the Expedition that Plaintiffs were traveling in on August 15, 2006 (Doc. 16, ¶ 3). It appears that Plaintiffs never filed suit against Swindell. Instead, both Plaintiffs each entered into a "Release of Claims and Indemnification Agreement" (hereinafter the "Releases") (Doc. 24, ¶ 1, Exs. A & B). Thus, Swindell filed an Amended Motion to Dismiss Third Party Complaint (Doc.

---

[2] Both Plaintiffs allege they have suffered head, neck, back and internal injuries, pain and mental suffering, lost and future wages, and both have expended large sums of money for medical, hospital and other healthcare expenses. In addition, plaintiff Muegge suffers from quadriplegia (*Id.*).

24),[3] pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**.

## III. <u>DISCUSSION</u>

### A. The Parties' Arguments

In his Amended Motion to Dismiss Third Party Complaint, Swindell argues that the under Illinois Joint Tortfeasor Contribution Act, the Releases discharge him for all liability for any contribution to any other tortfeasor, such as Ford (*Id*. at pp. 2-3, citing **740 ILL. COMP. STAT. 100/2(d)**). In Response, Ford states that it filed its Third Party Complaint for Contribution in order to preserve its right to claim several liability under **735 ILL. COMP. STAT. 5/2-1117**, as well as to preserve its rights to set off in the event of an adverse verdict, pursuant to the Illinois Joint Tortfeasor Contribution Act (Doc. 31, p. 1). Therefore, in the event the Court dismisses its Third Party Complaint against Swindell, Ford requests that it be dismissed over its objection (*Id*. at 2). Replying, Swindell points out that Ford fails to set forth any legal grounds as to why the Third Party Complaint should not be dismissed and proffers that if Ford's sole intent in bringing suit against him was to preserve its right to set off, it has already done so and thus, dismissal should be granted (Doc. 33, pp. 1-2).

---

[3] During a status teleconference, conducted on January 4, 2008, Swindell agreed that his Amended Motion to Dismiss (Doc. 24) effectively mooted out his initial Motion to Dismiss Third Party Complaint (Doc. 22) (*see* Doc. 26).

Swindell subsequently filed a Supplemental Motion to Dismiss[4] (Doc. 61), with accompanying brief (Doc. 62), to which Ford again Responded (Doc. 71); Swindell replying, in kind (Doc. 72). In his supplement, Swindell raises the argument, in the alternative, that if the Court finds Ford has a right of contribution, then the substantive law of the state where the tort was committed should be applied (Doc. 61, ¶ 16). In this case, the collision and Plaintiffs' resultant injuries occurred in Florida (*Id.*). Swindell further states that Florida does not recognize a right to contribution, and accordingly, Ford's contribution claim against him must fail (*Id.*, citing **D'Amario v. Ford Motor Co., 806 So.2d 424 (Fla. 2002) (holding that manufacturer who allegedly designed a defective product may not be held liable for damages caused by the initial collision and may not apportion its fault with the driver of the vehicle who caused the initial accident – manufacturer is solely responsible for the enhanced injuries proximately caused by the defective condition of its product**); *see also* Doc. 62, pp. 5-6).

For the first time, in its supplemental Response, Ford challenges whether Plaintiffs' release of claims against Swindell were given in "good faith" (Doc. 71, p. 2). Both Illinois and Florida statutory law require that release of a tortfeasor be made in good faith in order for the tortfeasor to discharge its contribution liability

---

[4] In his Supplemental Motion, Swindell seeks the Court's guidance as to whether the Third Party Complaint still exists or if it was mooted out due to the filing of Plaintiffs' Second Amended Complaint. The Court finds that Ford's Third-Party Complaint is stand-alone pleading (meaning that it was not incorporated into Ford's Answer), therefore any amendments to Plaintiffs' Complaint will not render it moot.

to other joint tortfeasors (*Id*.). In particular, Ford believes that the settlement amount Swindell paid each Plaintiff amounted to "nominal consideration . . . without regard to [his] relative culpability" (*Id*. at 3). In addition, Ford responds to Swindell's alternative argument regarding the applicability of Florida contribution law. Contrary to Plaintiff's assertion, Ford argues that Florida law provides it with a right to contribution (*Id*. at 3-5). In support, Ford cites the Florida Uniform Contribution Among Tortfeasors Act, **FLA. STAT. ANN. § 768.31**. Ford additionally attempts to distinguish ***D'Amario***, explaining that it involved "separate and distinct injuries," thus was considered a "crashworthy," "enhanced injury" or "secondary collision" case, unlike this matter, which Ford asserts involves injuries not readily differentiated from those caused by the crash and those caused by the alleged product defect (*Id*. at 5).

Swindell filed a Reply (Doc. 72). The Court notes that this Reply well exceeds the five page limit, pursuant to the Court's **Local Rule 7.1(d)**. Further, Swindell did not seek leave to file excess pages. Therefore, the Court will only consider the first five pages of his Reply (and any referenced exhibits therein), the remainder will be stricken. Replying to Ford's challenge that the Releases were not made in good faith, Swindell attempts to show the converse to be true. In support, Swindell offers Plaintiffs' Objection to Ford's Motion for Leave to File Third Party Complaint ("Plaintiffs' Objection"), attached as Exhibit C to his Reply (originally filed by Plaintiffs on May 24, 2007 at docket # 14 in this case). Plaintiffs' Objection states

that Swindell is 19 years old and of limited means (Doc. 72, p. 4 & Ex. C, ¶ 2). At the time of the incident, Swindell had $20,000.00 in liability coverage, provided through Geico Insurance Company (*Id*.). Attached to Plaintiffs' Objection is the Affidavit of plaintiff Connor, which states that Swindell was covered under an automobile insurance policy with the maximum limits of $10,000.00 payable per person and $20,000.00 maximum limits, regardless of the number of claimants (Doc. 72, p. 4 & Ex. A (to Ex .C) - Connor Aff., ¶ 3). Connor avers that including her, there were seven people injured in the collision at issue in this case (*Id*. at ¶ 4). Swindell's $20,000.00 maximum liability limit was divided evenly between the seven claimants, resulting in a payment of $2,857.15[5] each (*Id*. at ¶ 5). The Releases reflect this settlement amount (*see* Doc. 24, Exs. A & B). Lastly, Connor states that she has no knowledge of any additional coverage or assets to which Swindell may have access (*Id*. at ¶ 6). Therefore, Swindell believes his payment of the insurance policy limit (albeit divided among seven claimants) evinces a good faith settlement and release in order to discharge him from contribution liability to Ford.

**B.     Legal Standard**

Swindell filed both his Amended Motion to Dismiss Third Party Complaint and his Supplemental Motion pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**. However, in support of his Amended Motion (and

---

[5] Connor's Affidavit states the amount was "$2,857.15" whereas the text of Plaintiffs' Objections states the amount Swindell paid to Plaintiffs was "$2,857.14." However, the Releases also state that the amount paid to Plaintiffs was "$2,857.15." Obviously, this typographical error in Plaintiffs' Objection is inconsequential to the issues herein.

Supplemental Motion), Swindell attaches both the Releases and Plaintiffs' Objection (including Connor's Affidavit) for the Court's consideration. Pursuant to **Rule 12(d)**, in order to consider documents outside of the pleadings, the Court must convert the **Rule 12(b)(6)** motion into a **Rule 56** motion for summary judgment. ***Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (citing FED. R. CIV. P. 10(c))**. Extrinsic documents are only considered "part of the pleadings" if they are attached to the complaint, referred to in the complaint or central to the plaintiff's claim. ***McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)**.

Although the Releases could be considered, in part, central to Ford's contribution claim because their validity affects whether or not Ford's Third Party suit may proceed, the fact that the neither the Releases nor Plaintiffs' Objection are mentioned in either Plaintiffs' Third Amended Complaint or Ford's Third Party Complaint prevents the Court from allowing this analysis to proceed as if it were a **Rule 12(b)(6)** motion to dismiss. Should the Court then chose to convert the Motions to a **Rule 56** summary judgment motion, **Rule 12(d)** requires the Court allow the parties "a reasonable opportunity to present all the material that is pertinent to the motion." **FED. R. CIV. P. 12(d)**. This means the Court must provide the parties with ample notice of the conversion as well as additional time to prepare and present further materials in support of their respective positions. ***See R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d**

643, 647 (7h Cir. 2003); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). If the Court does not so allow, it will be considered reversible error unless there are no disputed material issues of fact and only a questions of law remain to be resolved. *Id.* *See also Burick v. Edward Rose & Sons*, 18 F.3d 14 (7th Cir. 1994) (no bright-line rule requiring notice be given when a court intends to convert a Rule 12(b)(6) motion to a Rule 56 motion – if no potential dispute of material facts existed, trial court's finding will not be disturbed for failure to provide notice to parties).

The issue to be determined in this Order centers around whether the Releases were made in good faith. A good faith finding under either Illinois or Florida law is a matter of Court discretion.[6] As neither the Illinois Joint Tortfeasor Contribution Act nor the Florida Uniform Contribution Among Tortfeasors Act specifically defines "good faith," the Court must consider the totality of circumstances, such as whether there is any evidence of fraud, collusive conduct, dishonesty or other wrongful behavior that would prevent a finding that the Releases were made in good faith. *See Johnson v. United Airlines*, 784 N.E.812, 821 (Ill. 2003); *Boca Raton Transp., Inc. v. Zaldivar*, 648 So.2d 812, (Fla. App. Ct. 1995).

Rather than convert Swindell's **Rule 12(b)(6)** Motion and supplemental

---

[6] Clearly, the Court will not now resolve any conflict of laws issue that may exist in this matter.

Motion to dismiss into a **Rule 56** motion for summary judgment, the Court elects not to consider the extrinsic documents. In this case, Swindell is arguing that Ford has failed to plead a contribution claim upon which relief can be granted due to his affirmative defense that the Releases bar any right to contribution. Whether Swindell is correct hinges upon a finding to be made by the Court of whether the Releases were given in good faith. Thus, the actual Releases and Plaintiffs' Objection (including Connor's Affidavit) are necessary to substantiate Swindell's showing of good faith. Without these extrinsic documents, Swindell's Motions fail. Further, the Court finds this issue would be more appropriately addressed in a **Rule 56** summary judgment motion, which would allow the parties the correct procedural vehicle to introduce extrinsic materials relevant to the issues, including any additional affidavits, deposition testimony or other exhibits which may support or contest a finding that the Releases were given in good faith. If the Court were to convert Swindell's motions to a **Rule 56** motion, the motions would remain pending on the docket while additional time was given for the parties to conduct discovery and supplement their briefs, if they so chose. Instead, the Court believes it would be more efficient and streamlined to deny the instant Motions. Then, it could properly consider a summary judgment motion filed by Swindell on this issue, if filed.

## IV. CONCLUSION

For the reasons set forth in this Order, Swindell's Amended Motion to Dismiss Third Party Complaint(Doc. 24) and Supplemental Motion to Dismiss Third Party Complaint (Doc. 61) are hereby **DENIED**.

**IT IS SO ORDERED**.

Signed this 5th day of September, 2008.

/s/      David R Herndon

**Chief Judge**
**United States District Court**