IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PAM CONNER and FRANK MUEGGE**,

**Plaintiffs,**

**v.**

**FORD MOTOR CO. and JOHNSON CONTROLS, INC.,**

**Defendants,**

**v.**

**TIMOTHY J. SWINDELL,**

**Third Party Defendant**                                   No. 07-0017-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction

This cause is before the Court on the third party defendant Timothy J. Swindell's ("Swindell") Motion for Summary Judgment (**Doc. 117**) and his accompanying Memorandum in Support (**Doc. 118**). Attached to the Motion for Summary Judgment are the following Exhibits: (1) Release of Claims and Indemnification Agreement ("the Conner Release"); (2) Release of Claims and Indemnification Agreement ("the Muegge Release"); (3) Affidavit of GEICO Claims Manager ("the Seavey Affidavit"); (4) Affidavit of Pamela S. Conner ("the Conner Affidavit"); and (5) an excerpt of the deposition of Timothy Swindell (Swindell

Deposition").

The defendant/third party plaintiff, Ford Motor Company ("Ford") filed a Response opposing the Motion for Summary Judgment (**Doc. 129**). Attached to the Response is a single Exhibit which is another excerpt from the Swindell deposition. Swindell filed a Reply. (**Doc. 130**). The material issues are fully briefed and oral argument is not required.

## **Background**

This case was removed to this Court pursuant to its diversity jurisdiction. (**Doc. 2**). Plaintiffs allege in the First Amended Complaint (**Doc. 40**) that on or about August 15, 2006 in Panama City, FL, a vehicle struck the 2003 Ford Expedition in which they were restrained third row passengers. (**Doc. 40, p. 1¶ 1, p. 5, ¶ 1**). Plaintiffs further allege that defects in the Ford Expedition and/or its components made it unreasonably dangerous and caused them injury. (**Doc. 40, pp. -2, p. 5-6**). Ford denies liability for Plaintiffs' injuries in its Answer. (**Doc. 43**).

Ford's filed a Third Party Complaint (**Doc. 16**) denying all liability for Plaintiffs' injuries (**Doc. 16, p. 2, ¶ 1-2**) and further alleging that at the time of the accident at issue, Swindell was driving the vehicle that Plaintiffs allege struck the Ford Expedition at issue. (**Doc. 16, p. 2, ¶ 3**). Ford also alleges that Plaintiffs' injuries were proximately caused by Swindell's negligence (**Doc. 16, p. 2, ¶ 3**) and seeks contribution from Swindell in an amount commensurate with his relative liability if Ford is found liable. (**Doc. 16, p. 3, ¶ 7**).

Swindell now seeks summary judgment as to the Third Party Complaint by asserting he reached "good faith" settlements with the Plaintiffs prior to this suit being filed. Ford, on the other hand prays that the Summary Judgment is denied because it argues the settlements were not in "good faith."

## Material Facts

Ford does not challenge the legal sufficiency of the settlements between Swindell and Plaintiffs reached prior to the instant lawsuit being filed. **(Doc. 117, Conner and Muegge Releases)**. Those settlements are memorialized in writing, supported by consideration, and release Swindell (among others) from any and all further liability to Plaintiffs for injuries resulting from the occurrence at issue. **(Doc. 117, Conner and Muegge Releases)**.

The parties agree that pursuant to those settlements, Swindell's insurer paid $2,857.15 to each Plaintiff. **(Doc. 117, p. 3, ¶ 10; Doc. 129, p. 4)**. Ford cites the $2,857.15 paid each Plaintiff in support of its argument the settlements were not in good faith. It asserts that sum is so nominal compared to the potential judgment in this case and Swindell's alleged relative liability for the accident that it is in conflict with the goals of the Contribution Act to equitably apportion damages. (**Doc. 129, pp. 4-5**)

Swindell argues the settlements were in good faith and cites the following material facts, which Ford does not dispute, in support of that assertion: (1) Swindell was 18 years old at the time of the accident and is now 20 years old

(**Swindell Dep. p. 7: 12-14**); (2) Swindell highest level of education is high school (**Swindell Dep. p. 12: 18-19**); (3) at the time of his deposition, Swindell was employed at a TGI Fridays restaurant bussing tables and at the time of the accident was employed at a car wash (**Swindell Dep. p. 13: 11-20; p. 96: 2-8**); (4) at the time of the accident, Swindell had no applicable insurance coverage other than the GEICO policy **(Swindell Dep. p. 92: 13-25, p. 93:1-14; Seavey Affidavit p. 2 ¶ 7)**; (5) the GEICO insurance policy covering the accident at issue had policy limits of $20,000.00 (**Seavey Affidavit, p. 2, ¶ 5-7**); (6) the $20,000 limits of Swindell's insurance policy were exhausted by being equally divided among seven claimants, including Plaintiffs, as part of the settlement of their claims against Swindell stemming from the accident at issue (**Seavey Affidavit, p. 2, ¶ 12; Conner Affidavit, p. 2, ¶ 5-6**); (7) Plaintiffs conducted an investigation and failed to discover any significant assets or alternative sources of income belonging to Swindell (**Conner Affidavit ¶ 9**); (8) Swindell did not own a home at the time of the accident and does not now own a home (**Swindell Dep., p. 92: 22-25, p. 93:1-5**). In short, Swindell argues and Ford does not dispute that he is of limited economic means, has no significant assets, and that his insurance resources are exhausted settling the claims stemming from the accident at issue.

## Legal Standards

### A. Standard of Review

Summary judgment is proper where the pleadings and affidavits, if any, "show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997)** (citing *Celotex*, **477 U.S. at 323**). In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994)**, *aff'd*, **51 F.3d 276** (citing, *Celotex*, **477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, **477 U.S. at 249-50**

(citations omitted); *accord* **Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996); Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." **Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. **Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 401 (7th Cir. 1997)**.

B.   **Choice of Law**

The Court is cognizant that there is a potential choice of law issue in this case between the substantive law of Illinois and Florida. Because this Court sits in diversity, the Court utilizes the choice of law rules used by the forum state: Illinois. **Midwest Grain Products of Ill. v. Productization, Inc., 228 F.3d 784, 787 (7th Cir. 2000)**. However, a choice of law need only be made where there is a conflict in law that will make a difference in the outcome of the issue before the Court. *See,* **Int'l Administrators, Inc. V. Life Ins. Co. Of North America, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985)**; *also see,* **Townsend v. Sears, Roebuck and Co., 227 Ill.2d 147, 155, 879 N.E.2d 893, 899 (2007).** In the absence of such a conflict, the applicable forum's law should be applied. **Railway Express Agency, Inc. v. Super Scale Models, LTD., 934 F.2d 135, 139 (7th Cir. 1991)**. As discussed in more detail below, because there is no material difference between the substantive law of Florida and Illinois regarding the discharge of liability in contribution

pursuant to a "good faith" settlement, the Court will apply the law of Illinois to this decision.

C.     **Contribution and Good Faith Settlements**

The aims of the respective Contribution Acts in Florida and Illinois are virtually identical, i.e., the encouragement of settlements and the equitable enforcement of damages among tortfeasors.. ***Johnson v. United Airlines*, 203 Ill.2d 121, 128, 784 N.E.2d 812, 818 (2003)**; ***Weddle v. Voorhis*, 586 So.2d 494, 495-496 (Fla. Dist. Ct. App. 1991)**. Both Illinois and Florida recognize that a "good faith" settlement between a joint tortfeasor and the plaintiff discharges any liability the joint tortfeasor may have in contribution. **See, 740 Ill. Comp. Stat. 100/2(d) (West 2009); Fla. Stat. Ann. § 768.31(5) (West 2009)**. In Florida, "settling tortfeasors may buy their peace with claimants in good faith settlements, and, in turn, receive immunity from contribution claims." ***Gouty v. Schnepel*, 795 So.2d 959, 963 (Fla. 2001)** Similarly, in Illinois, "[t]he good faith of a settlement is the only limitation the [Contribution] Act places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor." ***Johnson v. United Airlines*, 203 Ill.2d 121, 128, 784 N.E.2d 812, 818 (2003).**

Neither the Florida or Illinois statute defines the term "good faith." Instead, the courts in both states have defined the term by describing what is not a "good faith" agreement. **See, e.g., *Johnson*, 203 Ill.2d at134, 784 N.E.2d at 821; (an**

**agreement is not in good faith where the settling parties engaged in "wrongful conduct, collusion, or fraud or if the agreement conflicts with the terms of the Act or inconsistent with the policies underlying the Act**); *Boca Raton Transp., Inc. v. Zaldivar*, 648 So.2d 812, 813 (Fla. Dist. Ct. App. 1995); *St. Paul Fire and Marine Ins. Co. v. Shure*, 647 So.2d 877, 878-881 (Fla. Dist. Ct. App. **1994) (no good faith where there is evidence of collusion, fraud, dishonesty or other misconduct).** Both states require the party being sued for contribution to come forward with evidence of a legally sufficient settlement agreement at which time the burden shifts to the party claiming contribution to show the agreement was not in "good faith." *Id*.

Illinois has specifically defined the burden of proof on the party seeking to show a lack of good faith as one of "preponderance of the evidence." ***Johnson,* 203 Ill.2d at134, 784 N.E.2d at 821.** Although not specifically pronouncing a standard of proof, a reading of the Florida cases shows the standard to be the same as that in Illinois. **See, e.g.,** *Fuquay v. General Motors Corp.*, **518 F. Supp. 1065, 1068-1069 (M.D. Fla. 1981)**; *Boca Raton Transp., Inc. v. Zaldivar*, **648 So.2d 812, 813 (Fla. Dist. Ct. App. 1995)**; *St. Paul Fire and Marine Ins. Co. v. Shure*, **647 So.2d 877, 878-881 (Fla. Dist. Ct. App. 1994)**.

Finally, both states take a "totality of the circumstances" approach to determining good faith in this context. In Illinois, the approach is specifically defined as such. See e.g., ***Johnson v. United Airlines,* 203 Ill.2d 121, 128, 784**

**N.E.2d 812, 818 (2003).** While the Court's review of Florida law did not reveal a case specifically holding that the "totality of the circumstances" approach is to be used, it is clear from the cases that the Florida courts conduct largely the same analysis as do the courts in Illinois. ***Fuquay*, 518 F. Supp. at 1068-1069**; ***Boca Raton Transp., Inc.*, 648 So.2d at 813**; ***St. Paul Fire and Marine Ins. Co.*, 647 So.2d at 878-881.**

Because the law of Illinois and Florida regarding the discharge of liability in contribution pursuant to a "good faith" settlement is materially the same, the Court, which is sitting pursuant to its diversity jurisdiction, will apply the law of Illinois to answering the question of good faith. ***Supra***.

## Analysis

It is undisputed that Swindell and Plaintiffs entered into legally valid settlement agreements. Having reviewed the Muegge and Conner Releases (the legal sufficiency of which Ford does not dispute) as well as the other exhibits submitted by the parties, the Court finds that Swindell meets his preliminary burden of showing that the settlement was in good faith. Thus, the burden shifts to Ford to show otherwise. ***Supra***.

The sole argument in Ford's response is that the amount of consideration Plaintiffs received in the settlement ($2,857.15) is unreasonably small in light of the potential judgment in the case and Swindell's alleged relative liability for the occurrence at issue. (**Doc. 129, p. 4**). Ford adds that the relatively small settlement

amount shifts a "disproportionately large and inequitable portion" of the remaining potential liability onto Defendants. (**Doc. 129, p. 4**). Ford makes no allegations, let alone presents any evidence, of collusiveness, fraud or other bad faith regarding the settlement agreements.

Ford is correct that a disproportionately small settlement amount relative to a tortfeasor's culpability may be a factor indicating a lack of good faith. However, Illinois (as well as Florida) takes a totality of the circumstances approach to determine the "good faith" of a settlement-the amount of the settlement is merely one factor to consider. **Supra; also see, Pecoraro v. Balkonis. 383 Ill. App.3d 1028, 1038-1039, 891 N.E.2d 484, 494-495 (Ill. App. Ct. 2008)**. Moreover, "a disparity between the settlement amount and the *ad damnum* clause of the Complaint is not an accurate measure of the good faith of a settlement" nor does "the small amount of the settlement, alone, require a finding of bad faith." ***Johnson*, 203 Ill.2d at 136-137, 784 N.E.2d at 822-823**.

Ford is also correct that one goal of the Contribution Act is to ensure joint tortfeasors pay their equitable share, but as Ford also admits, the twin goal of the Contribution Act is to encourage settlements. **Supra.** The Court must strike a balance between those two policy considerations in light of the totality of the circumstances. ***Johnson v. United Airlines*, 203 Ill.2d 121, 133, 784 N.E.2d 812, 821 (2003)**.

The Court agrees with Ford that the total amount Swindell and his insurer

paid to settle the claim is relatively small given the seriousness of the allegations in the case. However, that fact is not the end of the analysis. The other material circumstances of this case show that Swindell was and remains essentially judgment proof. He has no significant income or assets. The limits of his only insurance policy were exhausted paying Plaintiffs' claims and those of five other claimants. There is no evidence of nor does Ford claim any collusion, fraud or other misconduct by the parties in reaching the settlements. Under those circumstances the Court does not find the settlement amount unreasonable nor can it find that the settlements were reached in bad faith.

## Conclusion

Ford has failed to meet its burden of demonstrating bad faith in the settlement between Plaintiffs and Swindell. Accordingly, the Court finds that as a matter of law the settlement between Swindell and Plaintiffs was in good faith for purposes of the Illinois Joint Tortfeasor Contribution Act, **740 Ill. Comp. Stat. 100/0.01 *et seq*.(West 2009)**, and **GRANTS** Swindell's Motion for Summary Judgment. Further, the Court directs the Clerk of the Court to enter judgment in favor of Third Party Defendant Timothy J. Swindell and against Defendant Ford Motor Company.

**IT IS SO ORDERED.**

Signed this 30th day of June, 2009.

/s/    David R Herndon
**Chief Judge
United States District Court**