IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FRANK MUEGGE,**

     **Plaintiff,**

  vs.                            NO. 07-cv-122-DRH
                                      CJRA TRACK:
**FORD MOTOR COMPANY,**      PRESUMPTIVE TRIAL MONTH:
                                      June
                                      JUDGE:  David R. Herndon
     **Defendant.**

## FINAL PRETRIAL ORDER

This matter is before the Court at a Final Pretrial Conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure:

**PLAINTIFF(S)' COUNSEL:  Bruce N. Cook, 12 W. Lincoln Street, Belleville, Illinois  62220; Jon Rosenstengel, 16 E. Main Street, Belleville, Illinois 62220; Mary Jane Brauer, 12 W. Lincoln Street, Belleville, Illinois 62220.**

**DEFENDANT(S)' COUNSEL: Mark Boyle, 140 S. Dearborn Street, Suite 700, Chicago, Illinois 60603 and John Krivicich, 140 S. Dearborn Street, Suite 700, Chicago, Illinois 60603.**

    **I.**    **NATURE OF THE CASE**

This is a personal injury case.  Plaintiff alleges that on August 15, 2006, that he was the third row passenger in a 2003 Ford Expedition that was stopped at a red light in Panama City, Florida, which was rear-ended by a 1995 Camaro that failed to stop for the traffic signal.  The plaintiff alleges that the Camaro underrode the Expedition and the impact forced Mr. Muegge into the roof of the Expedition and broke his neck, which caused quadriplegia.

It is the plaintiff's theory of the case that the 2003 Ford Expedition was negligently tested and designed in a manner that its third row seat passengers, including plaintiff Frank Muegge, could be exposed to hazardous vertical accelerations when the Expedition was underridden by a rear-ending automobile.

The plaintiff claims that the Ford Expedition was developed in the 1990's to compete in the Sports Utility Vehicle (SUV) market with the Chevrolet Suburban a light truck that had three rows of occupant seating. In the initial development of the Expedition defendant Ford's prototype placed the body of a Chevrolet Suburban on a Ford 150 frame. Third row seating on the prototype was placed, like the Suburban, above the cargo deck and over the rear axles protecting the third row occupants from intrusion and vertical accelerations from rear-ending automobiles. A tow bar that acted as a blocker beam to prevent intrusion was placed on 1997 to 2002 model year Expeditions.

To gain a competitive advantage in model year 2003 Ford negligently redesigned the third row seating to make it comfortable for adult seating. To accomplish that, the third row seat was located behind the rear axles and lowered below the cargo deck (and into the path of the energy from an underriding rear-ending car). Inextricably defendant Ford, when it lowered the seat it also negligently raised the tow bar, a/k/a blocker beam, several inches which enhanced the likelihood of underride and intrusion by an auto in a rear impact.

The plaintiff claims that in testing for the redesign of the third row seating that defendant negligently performed its test procedures and ignored crash test information that indicated third row seating would be exposed to hazardous intrusion and vertical accelerations during foreseeable rear impacts.

Plaintiff brings his lawsuit in two counts. Count I is based upon product liability and alleges that the Expedition was defectively designed and that the defective, unreasonably dangerous condition of the Expedition was a proximate cause of plaintiff's injuries for which he seeks money damages. The defendant Ford denies the allegations of Count I, denies the Expedition was unreasonably dangerous, denies any act or omission on its part or condition of the Expedition was a proximate cause of plaintiff's injuries and denies plaintiff was injured to the extent claimed. Defendant Ford further alleges the sole proximate cause of plaintiff's injuries was the negligence of the driver of the Camaro.

Specifically as to its defense of Count I, Ford relies on the balancing test set forth in Mikolajczyk v. Ford, 231 Ill.2d 516 (2008) and Calles v. Scripto-Tokai Corp., 224 Ill.2d 247 (2007), to establish that the design of the 2003 Expedition, including its rear structure, third row seating and related components, is not unreasonably dangerous when all the relevant factors of the risk-utility test are applied and weighed. Among the factors to be considered, Ford intends to show the vehicle meets all the applicable industry, governmental, and internal Ford standards for crash safety and vehicle performance. These standards include, but are not limited to, specific safety standards applicable to the rear seats in the vehicle, seat belt restraints, head restraints, head impact protection, and fuel system integrity. Ford

will also show that the Expedition has many desirable features that create a utility and benefit for users. These benefits include, but are not limited to, the eight-passenger capacity and improved occupant seating space and fold flat seating in the third row. Ford will also establish the low risk of injury from rear impacts in existing automobile accident data so the jury can weigh the risk exposure against the competing benefits of the 2003 Expedition's rear seat design, rear structure design, and rear seating in vehicles generally. Ford will also show that this type of high-speed rear impact creates an expectation and risk of serious injury and fatality for all vehicle designs, and the 2003 Expedition performs well by comparison under the circumstances of this high energy crash. Ford will also show that no alternative design existed at the time of manufacture that would prevent or substantially reduce the potential for serious injury to a third row occupant under the circumstances of the accident. Additionally, Ford will show that any alternative design, even if established as potentially reducing the risk of injury in this accident, would introduce other risks that outweigh the choice of the alternative, or the alternative design would substantially impair the utility of the 2003 Expedition's design benefits.

Count II of plaintiff's Complaint alleges the defendant was negligent with regard to the design of the Expedition and that defendant's negligence was a proximate cause of plaintiff's injuries. The defendant denies it was negligent, denies any act or omission on its part was a proximate cause of plaintiff's injuries and denies plaintiff was injured to the extent claimed. Defendant alleges that the sole proximate cause of plaintiff's damages was the conduct of the driver of the Camaro.

In defense of Count II, Ford will present evidence to show that it exercised reasonable care in designing the 2003 Expedition because the balance of the risks inherent in the vehicle and its rear occupant seating area and structure, are outweighed by the benefit of the utility of the 2003 Expedition as set out in Jablonski v. Ford Motor Company, 2011 IL 110096, 2011 Ill. LEXIS 1156 (2011). Consistent with the risk-benefit factors set out in Jablonski, Ford will offer evidence of the vehicle's compliance with all applicable government, Ford internal, and industry standards for crash safety and vehicle performance (same as Count I). Ford will offer evidence of the risk of injury to rear seat occupants as demonstrated by real world accident statistics. Ford will offer evidence of the expectation for rear crash protection in the rear seats of vehicles under the high-speed crash testing for fuel system integrity. Ford will offer evidence that no feasible alternative design exists that would reduce or prevent the harm to the plaintiff under the circumstances of this accident. Ford will also show that any feasible alternative design, if offered with reliable expert analysis, would either substantially impair the utility of the 2003 Expedition or would introduce other dangers of equal or greater magnitude. As such, Ford's design choice was not negligent when all the relevant risks and benefits are weighed.

Ford also disputes the extent of damages claimed by plaintiff, particularly the alleged cost of future medical care.

## II. JURISDICTION

    A.    This is an action for: damages.

    B.    The jurisdiction of the Court is not disputed.

At the time of the accident in question and at the time of the filing of the original Complaint, the plaintiff was a citizen of the State of Missouri and defendant was a Delaware corporation with its principal place of business in the State of Michigan.

## III. UNCONTROVERTED FACTS

The following facts are not disputed or have been agreed to or stipulated to by the parties: That on August 15, 2006 the plaintiff was seated in the right rear third row seat in a 2003 Ford Expedition designed and manufactured by defendant, stopped for a red light on U.S. Highway 98 in Panama City, Florida. The Expedition was purchased new by its driver, Ken Vilimek, in Chicago, Illinois January 31, 2003. The Expedition was struck in the rear by a 1995 Camaro which had failed to stop for the traffic control signal. Plaintiff's head struck the vehicle interior and he became paralyzed.

## IV. AGREED TO ISSUES OF LAW

The parties agree that the tort law of the State of Illinois shall be applied to this case. The parties agree that neither the State of Florida nor the State of Illinois required seatbelt usage by rear seat occupants in 2006.

## V. WITNESSES

    A.    List of witnesses plaintiff expects to call, including experts:

        1.    Expert witnesses.

            (a) John Yannaccone, P.E.
            (b) Jan Klosterman (Healthcare Planner)

The plaintiff expects to call the following employees of Ford Motor Company

through the use of deposition excerpts:

    (1) Paul Mayer (Core Supervision Engineer)
    (2) Jack Ridenour (former Chief Engineer - Safety)
    (3) Douglas Dollison (Package Engineer)
    (4) Alan Dubaisi (Test Engineer)
    (5) Jerome Ng (pronounced "eng" - Supervisor Safety Engineer Testing)
    (6) Senthil Mahadevan
    (7) Mark Piekny (Former Ford Seat Engineer)
    (8) Scott Grandinett (Ford Seat Engineer)
    (9) Michael Hamilton (Supervisor Crash Testing)
    (10) John Viera (Chief Engineer Expedition)
    (11) Mr. Viera's replacement
    (12) Susan McIntire (Chief Engineer Safety Lab)
    (13) Chief Engineer (Seats)
    (14) Roger Burnett (Design Analysis Engineer)
    (15) Michael Kozak (Body Engineer)
    (16) Agnes Kim (Biomechanic)
    (17) Ammerswara Sajja (Seat Engineer)
    (18) Plaintiff's various physicians (medical records most likely) Dr. Pozzi, Dr. Laurence Gelstein, Dr. Ginger Jiang and Nurse Maureen Fox.

    2.    Non-expert witnesses.

(a) Ken Vilimek
(b) Elaine Vilimek
(c) Christian Vilimek
(d) Pam Conner
(e) Frank Muegge
(f) Jackie Harres (to identify produced photos, if necessary)
(g) Jill Harres (to identify produced photos, if necessary)

B.    List of witnesses defendant expects to call, including experts:

    1.    Expert witnesses.

(a) Dr. Jarrod Carter (Ph.D. - Accident Reconstruction)
(b) Dr. David Viano (Ph.D., M.D. - Biomechanic)
(c) Roger Burnet (Design Analysis Engineer, Ford Motor Company)

In addition to the Ford employee witnesses listed by Plaintiff, Ford expects to call the following witnesses through the use of deposition excerpts:

>  (d) Clara Condo-Varner (investigating officer)
>  (e) Scott Miller (paramedic)
>  (f) Cory Gaiser M.D.

  2. Non-expert witnesses.

In addition to the Ford non-expert witnesses listed by Plaintiff, Ford expects to call the following witness through the use of deposition excerpts:

>  (a) Timothy Swindell

If there are any third parties to the action, they should include an identical list of witnesses as that contained in parts A and B above.

  C. Rebuttal witnesses. Each of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

## VI. EXHIBITS

The parties shall prepare and append to the Final Pretrial Order a Pretrial Exhibit Stipulation, which shall be on a separate schedule. The Pretrial Exhibit Stipulation shall contain the style of the case, be entitled "Pretrial Exhibit Stipulation," shall contain each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including briefly the basis of the objection. All parties shall list their exhibits in numerical order. Where practicable, copies of all exhibits to which there is an objection will be submitted with the stipulation.

The burden for timely submission of a complete list is on plaintiff. Each party is to submit a pre-marked copy of each exhibit for the Court's use at trial. The list of exhibits shall be substantially in the following form:

### PRETRIAL EXHIBIT STIPULATION

**Plaintiff(s)' Exhibits**

Number          Description          Objection          If objection, state grounds

A pre-trial exhibit stipulation will be filed seasonably by the parties.

**Defendant(s)' Exhibits**

| Number | Description | Objection | If objection, state grounds |
|---|---|---|---|
| | | | |

### VII. DAMAGES

Plaintiff is a quadriplegic who was earning $55,000 annually before his injury. Plaintiff's medical bills to date are in excess of $1,300,000.00. The plaintiff's lifecare plan has been produced to defendant. It has a range of $6,084,330.37 to $9,569,795.89.

### VIII. BIFURCATED TRIAL

The parties have not agreed to a bifurcated trial.

### IX. TRIAL BRIEFS

The defendant may wish to brief issues involving risk/utility versus the consumer expectation standard relating to Count I.

### X. LIMITATIONS, RESERVATIONS, AND OTHER MATTERS

A. **Trial Date**. Trial of this cause is set for the week of June 11, 2012.

B. **Length of Trial**. The probable length of trial is 12 days. The case will be listed on the trial calendar to be tried when reached.

   **Mark Appropriate Box**:  JURY. . . . . . . . .  X
   NON-JURY. . . .  ____

C. **Number of Jurors**. The Court will select eight jurors.*

D. **Jury Voir Dire**. The Court will conduct voir dire. Limited participation by counsel may be permitted. If voir dire questions are to be tendered, they should be submitted with the Final Pretrial Order.

E. **Jury Instructions**. All jury instructions shall be submitted as directed by the presiding judge and a copy delivered to opposing counsel.

**IT IS ORDERED** that the Final Pretrial Order may be modified at the trial of the action or before to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

    **IT IS SO ORDERED**.

    DATED: May 27, 2012_    /s/ David R. Herndon

    David R. Herndon
    2012.05.27 09:30:08 -05'00'

    DAVID R. HERNDON, CHIEF JUDGE
    UNITED STATES DISTRICT COURT


    /s/ Bruce N. Cook
    BRUCE N. COOK, #00507660
    ATTORNEY FOR PLAINTIFF

COOK, YSURSA, BARTHOLOMEW, BRAUER & SHEVLIN, LTD.
12 West Lincoln Street
Belleville, Illinois  62220
(618) 235-3500
e-mail:  bncook@cooklawoffice.com


    /s/ Mark H. Boyle
    MARK H. BOYLE, #6200934
    ATTORNEY FOR DEFENDANT

Donohue, Brown, Mathewson & Smyth
Attorneys at Law
140 S. Dearborn Street, Suite 700
Chicago, Illinois  60603-2397
(312) 422-0900
mark.boyle@dbmslaw.com

* Change inserted by the Court per separate Order to be entered accordingly.